Filed 8/3/26  Santana v. FCA US CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAUL RIOS SANTANA, | |
| Plaintiff and Appellant, | G064472 |
| v. | (Super. Ct. No. RIC1904922) |
| FCA US, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge. Affirmed. Requests for judicial notice denied.

Knight Law Group, Roger Kirnos, Christopher E. Swanson, Russell Higgins; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Joseph V. Bui and Alex Chemerinsky for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Shane H. McKenzie; Ongaro, Scott S. Shepardson and Sharon L. Stewart for Defendant and Respondent.

Plaintiff Raul Rios Santana challenges a judgment denying civil penalties on his lemon law claim against his vehicle's manufacturer, defendant FCA US, LLC. (See Song-Beverly Consumer Warranty Act; Civ. Code, § 1791 et seq.[1]) Santana contends FCA's repurchase proposal included impermissible terms, entitling him to a jury trial on whether the violations were willful and warranted civil penalties.

We conclude that, as a matter of law, none of the challenged terms in FCA's proposal supported civil penalties. Thus, we affirm.

FACTS

Santana bought a new FCA-made Jeep in late 2015, paying a downpayment and financing the rest. As part of the transaction, Santana traded in his 14-year-old vehicle. The dealership credited him a small amount and took on his old loan, rolling the difference—about $3,500 in negative equity—into his new loan.

Over the next three years, Santana brought his vehicle in for repair multiple times, but according to him, the problems persisted. He contacted FCA, asserted the vehicle was a "lemon," and said he no longer wanted it.

After inspecting the vehicle, FCA emailed Santana in 2019, proposing to replace or repurchase it: Santana would need to return the Jeep "in an undamaged condition (save normal wear and tear)" and provide "a fully executed Release for all defendants." It did not attach a proposed release or outline its terms. Santana informed FCA that he wanted to proceed with a repurchase.

---

[1] Undesignated statutory references are to this code.

FCA emailed Santana again, requesting various documents to finalize a repurchase offer. It informed him it would reimburse the amounts he paid for the vehicle, without the negative equity on his trade-in, and with deductions for any damage beyond normal wear and tear. It provided damage guidelines describing what would constitute normal wear and tear (like any exterior damage up to the size of a credit card), listed examples of excessive damage (like burn marks or windshield cracks), and stated that "[a]ll other damage is chargeable to the consumer." Santana did not respond to that email or FCA's later attempts to reach him.

Santana then sued FCA for lemon law violations, alleging that FCA had failed to satisfy its statutory duty to repurchase his vehicle and seeking the repurchase, plus civil penalties and attorney fees. During discovery, FCA produced a template release it would have presented to Santana had he proceeded with the repurchase process. The template included a release of all "known and unknown claims" relating to the vehicle and a promise to indemnify FCA and its affiliates for any such claims.

Before trial, Santana moved to "bifurcate trial and proceed by bench trial" on the "purely legal" matter of the validity of FCA's repurchase proposal. (Cleaned up.) He sought an order declaring the proposal "illegal" and excluding it from evidence at a subsequent jury trial on remaining issues. FCA did "not oppose Plaintiff's request to bifurcate the issue of whether Defendant's pre-litigation repurchase offer complied with the Song-Beverly Consumer Warranty Act." The trial court ultimately granted the request, leaving only the willfulness of any violations and civil penalties for a jury trial, depending on the bench trial's outcome. In his trial briefs, Santana claimed FCA's repurchase proposal did not comply with the lemon law

because it was conditioned on an undisclosed, overbroad release, required reductions for excessive damage, and did not include negative equity.

The trial court ultimately concluded that FCA's repurchase proposal substantially complied with the lemon law. It concluded that each of the features Santana contested—the exclusion of negative equity, deductions for any excessive damage, and the absence of the proposed release—was permissible. The court therefore ordered the civil penalty prayer "stricken from the Complaint," consistent with the parties' bifurcation. But it ordered FCA to repurchase the vehicle for about $35,000, which did not include any deduction for excessive damage. It did not require Santana to sign a release. And it found Santana to be the prevailing party. The court noted it would decide any issues involving attorney fees based on post-judgment motions.

DISCUSSION

The trial court correctly concluded that, as a matter of law, Santana was not entitled to civil penalties. We review the trial court's legal conclusions de novo, including its interpretation and application of the statute. (*Newstart Real Estate Investment LLC v. Huang* (2019) 37 Cal.App.5th 159, 163; *Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804 (*Niedermeier*).)

The lemon law permits buyers of new vehicles to enforce express warranties. If a manufacturer is unable to repair a new vehicle after a reasonable number of attempts, it must promptly replace or repurchase the vehicle. (§ 1793.2, subd. (d)(2).) To repurchase a vehicle, the manufacturer must pay "restitution in an amount equal to the actual price paid or payable by the buyer," including charges for transportation or manufacturer-installed items. (§ 1793.2, subd. (d)(2)(B).) It must also pay "collateral charges such as sales or use tax, license fees, registration fees, and other official fees." (*Ibid.*)

4

The repurchase amount excludes nonmanufacturer-installed items and may be reduced for miles driven before the first repair attempt. (§ 1793.2, subd. (d)(2)(B)–(C).) Those are the only enumerated reductions.

A buyer harmed by a violation of the statute or an express warranty is entitled to the replacement-or-repurchase remedy and attorney fees. (§ 1794, subds. (a), (b), (d).) Civil penalties, up to twice the amount of actual damages, may be imposed if the violation was "willful."[2] (§ 1794, subd. (c).)

"As a general rule, 'courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions.'" (*Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1074 (*Naranjo*).) Civil penalties are meant to punish and deter. (*Id.* at p. 1075.) But "[t]hose who proceed on a reasonable, good faith belief that they have conformed their conduct to the law's requirements do not need to be deterred from repeating their mistake, nor do they reflect the sort of disregard of the requirements of the law and respect for others' rights that penalty provisions are frequently designed to punish." (*Ibid.*)

---

[2] The Legislature recently enacted an alternative statutory scheme that manufacturers may opt into. (Code Civ. Proc., §§ 871.20–871.30.) Among other things, the new provisions expressly authorize manufacturers to require a standardized release (*id.*, § 871.25), and to exclude negative equity from the repurchase amount (*id.*, § 871.27). The parties agree the new provisions do not apply here, though each contends they support its respective position. Because the legislation does not bear on whether FCA acted willfully in 2019, we need not consider it. For the same reason, we do not address the parties' policy arguments and references to the lemon law's legislative history. We deny the parties' requests for judicial notice of related materials as unnecessary.

We conclude that, given the state of the law in 2019, none of the challenged features of FCA's proposal could support a finding of willfulness and imposition of civil penalties.

## I.

### EXCLUDING NEGATIVE EQUITY WAS NOT A WILLFUL VIOLATION

Several courts have held that a manufacturer need not include negative equity from a trade-in in the repurchase amount because it is not part of the new vehicle's purchase price. (E.g., *Herrera v. Ford Motor Company* (C.D. Cal., Feb. 24, 2022, CV 21-4731 PA (MARx)) 2022 WL 562267, at p. *4 [collecting cases].)

Neither the statutory text nor common sense compels a different conclusion. Negative equity reflects pre-existing debt the buyer owed on a prior vehicle, unrelated to the purchase of the new vehicle. The buyer sells that old vehicle to the dealership, applies the trade-in value toward the outstanding loan balance, and finances any remaining debt as part of the new transaction. The fact that the parties structure these transactions together does not transform the old debt on a different vehicle into part of the "actual price paid or payable" for the new vehicle.[3] (§ 1793.2, subd. (d)(2)(B); see, e.g., *Rivera v. Ford Motor Company* (C.D. Cal., Feb. 10, 2020, CV 18-07798 DSF (PJWx)) 2020 WL 1652534, at p. *4.)

Santana's contention that negative equity should be included in the repurchase amount as a "'collateral charge'" is unpersuasive. The act

---

[3] We reject Santana's claim that the trial court erred in accepting the "almost certainly inflated" negative equity amount per the sale agreement. Santana agreed to the trade-in's valuation as reflected in the transaction documents. And he never asked the trial court to use a different amount. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 798 [contention not raised below is forfeited].)

refers to collateral charges "such as sales or use tax, license fees, registration fees, and other official fees." (§ 1793.2, subd. (d)(2)(B).) A "general term or category is restricted to those things that are similar to those which are enumerated specifically." (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 43 (cleaned up).) Thus, the most natural reading of the term collateral charges is that it refers to costs like taxes and regulatory fees, "legally required" as part of the purchase transaction itself. (*Robbins v. Hyundai Motor America* (C.D. Cal., Aug. 7, 2014, SACV 14-00005-JLS (ANx)) 2014 WL 4723505, at p. *4.)

*Niedermeier* does not support Santana's position. There, our Supreme Court held that when a manufacturer's failure to comply with the lemon law forces a buyer to trade in or sell a defective vehicle, the statutory restitution remedy is not reduced by the buyer's trade-in credit or sale proceeds. (*Niedermeier, supra*, 15 Cal.5th at p. 801.) The court reasoned that the statute expressly identified only two permitted exclusions or reductions— nonmanufacturer-installed items and mileage—suggesting the Legislature did not intend to authorize others. (*Id.* at p. 807.) But negative equity is not reasonably understood as part of the "actual price paid or payable" for a new vehicle to begin with. So treating it as outside the repurchase amount is neither an exclusion nor a reduction. We do not read *Niedermeier* to suggest that every item appearing on the sales agreement, however unrelated to the new vehicle's price, must be included in the restitution amount.

Regardless, *Niedermeier* was decided in 2024, years after FCA made its proposal. So even assuming *Niedermeier* supported Santana's position, it could not retroactively render FCA's earlier interpretation unreasonable.

7

## II.

### REQUIRING A RELEASE WAS NOT A WILLFUL VIOLATION

Santana identifies no authority specifically prohibiting manufacturers from requiring any release as part of a repurchase.[4] Instead, he relies mainly on the proposition that a manufacturer's statutory duty to repurchase a defective vehicle is "unconditional." (Italics omitted.) But that principle does not sweep so broadly.

A recent decision concluded that the lemon law permits a manufacturer to condition a repurchase offer on financial confidentiality. (*Carver v. Volkswagen Group of America, Inc.* (2024) 107 Cal.App.5th 864, 884–885.) The court reasoned that the Legislature's express prohibition of *mechanical* confidentiality requirements (§ 1793.26, subd. (a)(1), (2)) suggested no prohibition on *financial* confidentiality requirements. (*Carver*, at pp. 885–886.) At a minimum, *Carver* suggests that the manufacturer's unconditional obligation to repurchase a vehicle does not categorically preclude procedural conditions that do not otherwise conflict with the statute's terms or purpose, potentially including a narrowly tailored release.

Santana does not identify a potentially willful violation by claiming FCA's proposal was "conditioned on [his] future assent to the terms of an undisclosed release agreement." FCA did not ask Santana to agree to unseen terms. Rather, it informed him that a release would be required as

---

[4] We note that Santana's primary position on appeal—that the lemon law categorically prohibits any release requirement—is different from his primary position below. Although he referred to the manufacturer's "unconditional" repurchase obligation, his specific, developed contentions about the release focused on FCA's failure to provide the release with its proposal and on the asserted overbreadth of the template produced in discovery. (Cleaned up.) Thus, the trial court understandably did not address whether the lemon law bars all release requirements.

part of any final repurchase agreement. FCA never finalized the release terms because Santana ceased communicating with it.

For similar reasons, Santana's contention that FCA's template release was overbroad does not suggest a willful violation. FCA never asked Santana to sign the template release or any particular release. Santana cannot establish a willful violation based on terms that were never included in FCA's proposal.

Santana's reliance on attorney fee cases is misplaced. (See *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831; *Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462.) Those decisions held that plaintiffs reasonably continued to incur attorney fees after rejecting settlement offers that either required a release without disclosing its terms (*Etcheson*, at p. 846) or included "a broad release of claims and a confidentiality clause" that the ultimate judgment did not require (*Goglin*, at p. 471). But FCA's proposal did not include the type of expansive release at issue in *Goglin*. And saying that a party can reasonably decline a settlement offer conditioned on a future release does not suggest the offer itself constituted a willful violation warranting civil penalties.

## III.

### REQUIRING AN OFFSET FOR EXCESSIVE DAMAGE WAS NOT A WILLFUL VIOLATION

When FCA made its proposal in 2019, no court had held that manufacturers could not deduct excessive damage from the repurchase amount. And as late as 2022, three years after FCA's proposal, a court suggested this deduction was permissible. (*Herrera v. Ford Motor Company* (C.D. Cal., Feb. 24, 2022, CV 21-4731 PA (MARx)) 2022 WL 562267, at *5 [lemon law "allows the manufacturer to factor in the condition of the

9

vehicle"].) We agree that this practice is now likely impermissible under *Niedermeier*, which suggested that section 1793.2 did not permit any unenumerated reductions. (*Niedermeier, supra*, 15 Cal.5th 792, 807.) But *Niedermeier* was not decided until 2024.[5] FCA's failure to anticipate *Niedermeier* five years before it was decided did not constitute willfulness.

Santana's assertion that "ignorance of the law is no excuse" misses the mark. (Cleaned up.) As our Supreme Court recently explained, "[w]hen laws are specifically aimed at conduct that has been undertaken with disrespect or disregard for the governing law, it follows that the law will exempt unwitting violations—despite the legal cliche 'ignorance of the law is no excuse.'" (*Naranjo, supra*, 15 Cal.5th at p. 1082.)

We disagree with Santana's assertion that FCA claimed authority to impose overbroad reductions based only on its "subjective view" of the vehicle's condition. (Italics omitted.) FCA's written guidelines supplied reasonably specific criteria for determining excessive damage, like a threshold permitting exterior damage up to the size of a credit card. (Cf. *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 615–616 & fn. 20 [correction offer under Consumer Legal Remedies Act was illusory because it depended on dealer's determination if vehicle was in "'unacceptable

---

[5] One decision Santana cites held that the statute did not permit an offset for the buyer's use of the vehicle after requesting repurchase because the statute expressly addressed other offsets while omitting that one. (*Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1243–1244.) But that case also stated that a manufacturer may be entitled to equitable offsets that do not conflict with the statute and noted that other situations "may well justify a defense to the buyer's claim." (*Id.* at pp. 1242, 1244.) Another case Santana cites is inapposite because it involved a manufacturer's attempt to exclude rental expenses (*Lukather v. General Motors, LLC* (2010) 181 Cal.App.4th 1041, 1052), which the statute expressly requires manufacturers to reimburse (§ 1793.2, subd. (d)(2)(B)).

condition'"].) Read in context with the listed criteria and examples, the guidelines' reference to "[a]ll other damage" referred to other operation-related damage. It could not reasonably be understood to include the very defects that triggered the repurchase proposal, contrary to the interpretation Santana urges. Accordingly, FCA's proposed reduction for excessive damage did not constitute a willful violation supporting civil penalties.

We decline to consider Santana's claim, raised for the first time in his reply brief, that FCA willfully violated its obligation to repair the vehicle. (See *Dietz v. Meisenheimer & Herron, supra*, 177 Cal.App.4th at p. 798 [issue not raised below is forfeited]; *County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 475 [contention not developed in opening brief is forfeited].)

In sum, none of the challenged features of FCA's proposal could support civil penalties. Santana was therefore not entitled to a jury trial on willfulness and the trial court did not err in striking his demand for civil penalties.

## DISPOSITION

The judgment is affirmed. FCA is awarded costs on appeal.


SCOTT, J.

WE CONCUR:


DELANEY, ACTING P. J.


GOODING, J.